UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ILIE SIRBU,

Petitioner,

v.

BRUCE SCOTT, et al.,

Respondent.

Case No. 2:26-cv-03832-TLF

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Ilie Sirbu filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1. Petitioner is currently detained by the U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Mr. Sirbu contends respondents violated his Fifth Amendment right to due process in detaining him without prior notice and a hearing and through cumulative government caused delay and defective process in his removal proceedings. Dkt. 1 at 11-18.

The petition asks the Court to (1) order respondents to immediately release petitioner under reasonable conditions restoring, as nearly as practicable, the status quo before the unconstitutional arrest; (2) alternatively, order respondents to provide a hearing within four days before a neutral decisionmaker at which the government must prove by clear and convincing evidence that detention is necessary because petitioner presents danger or flight risk that cannot be mitigated by reasonable conditions; (3)

require a contemporaneous record of any hearing and findings addressing the § 212(d)(3)(A) waiver, intervening conduct, family and community ties, compliance history, the defective I-213, the government-caused delay, and less restrictive alternatives and order release if the hearing does not occur within the time set by the court; (3) enjoin any future re-detention during the pendency of the removal proceedings without advance written notice and a pre-deprivation hearing, absent a genuine emergency or probable cause of new criminal conduct; and (4) award reasonable attorney fees and costs. *Id.* at 18-19.

The Court **GRANTS** the petition as follows.

**BACKGROUND**

Petitioner is a citizen of Moldova, who first entered the United States on July 22, 2002, as a refugee in New York City and later adjusted to Lawful Permanent Resident ("LPR") status on January 28, 2005, pursuant to Section 209(a) of the Immigration and Nationality Act ("INA"). Dkt. 6 (Subero Decl.), ¶ 3; Dkt. 7 (Collins Decl.), Ex. A (2011 NTA).

Petitioner was arrested numerous times between 2004 and 2011 and was convicted of several offenses, including identity theft, and residential burglary. Dkt. 6 (Subero Decl.), ¶ 4; Dkt. 7 (Collins Decl.), Ex. B (DOC); Dkt. 1 at 6. On November 1, 2010, petitioner was convicted of felony residential burglary and sentenced to 13 months of confinement. Dkt. 6 (Subero Decl.), ¶ 5; (Collins Decl.), Ex. B (Criminal Judgment).

Following that conviction, an immigration judge ("IJ") terminated petitioner's LPR status pursuant to Sections 237(a)(2)(A)(iii)/8 U.S.C. Section 1227 – conviction of an

aggravated felony as defined in section 101(a)(43)(F) of the INA and 18 U.S.C. Section 16 -- and 237(a)(2)(A)(ii) – conviction of two or more crimes involving moral turpitude -- of the INA resulting from the felony conviction and ordered him removed to Moldova on December 14, 2011; petitioner waived appeal. Dkt. 6 (Subero Decl.), ¶ 6; Collins Decl., Ex. C (IJ Removal Order). ICE subsequently removed petitioner to Moldova on January 25, 2012. Dkt. 6 (Subero Decl.), ¶ 7. Petitioner indicates he is in the process of seeking post-conviction relief that may entitle him to re-open these proceedings. Dkt. 1 at 6.

Petitioner later lived with his wife and children in the United Kingdom. Dkt. 1 at 7. In 2022, he applied at the U.S. Embassy in London for a visitor visa. Dkt. 1 at 7. The Embassy's Visa Coordination Unit explained that because of his convictions he could travel only if DHS/CBP granted 'special permission,' described as a waiver of ineligibility. *Id.* The Embassy further explained that the Department of State would decide whether to recommend the waiver, but that DHS/CBP held final authority to grant or deny it. *Id.*

At DHS/CBP's direction, the Embassy requested a sworn statement describing petitioner's complete arrest and conviction history. *Id.* Petitioner supplied the requested disclosure and the government granted the waiver. *Id.* The visa was issued June 24, 2022, and bears the annotation "212(d)(3)(A) WAIVER OF 212(a)(2)(A)(i) AND (2)(A)(ii) GRANTED." Petitioner was inspected and admitted on August 17, 2022. *Id.* He departed on September 6, 2022, before the authorized period expired. *Id.*

He was again inspected and admitted on December 20, 2022, with authorization through June 19, 2023. *Id.*

Respondents assert that petitioner reentered the United States on or about December 20, 2022, was admitted on a B-2 nonimmigrant visitor visa, authorized to remain until June 19, 2023, but remained beyond that time.[1] Dkt. 6 (Subero Decl.), ¶ 8; Dkt. 7 (Collins Decl.) Ex. H (Notice of I-261).

On March 8, 2023, the Renton, Washington Police Department arrested petitioner for Harassment Domestic Violence Failure to Comply. Dkt. 6 (Subero Decl.), ¶ 9. On July 25, 2023, the Renton Municipal Court dismissed the charge. *Id.* Petitioner presents evidence that petitioner's 2023 arrest was due to an outstanding warrant for failing to appear on the harassment charge in 2010, prior to petitioner's 2012 removal. Dkt. 8-4 at 7. The parties agree the charges were dismissed in July 2023.

On June 2, 2023, before his visa expired, petitioner filed an I-589 Application for Asylum and Withholding of Removal with the United States Citizenship and Immigration Services ("USCIS") with his wife and three children as derivatives. Dkt. 6 (Subero Decl.), ¶ 10; Dkt. 1 at 7.

Petitioner has lived openly with his wife and three children in the United States. Dkt. 1 at 8. His wife studies at Washington State University, works part time as an accountant, and operates a small business. *Id.* Petitioner performed substantial childcare, transportation, household, and financial responsibilities. *Id.* Petitioner's elderly mother is a U.S. citizen. *Id.*

Respondents assert the following:

---

[1] The original NTA stated petitioner was admitted on August 17, 2022, on a B2 visa and was authorized to stay until February 15, 2023, but remained beyond that date without authorization. Dkt. 7 (Collins Decl.), Ex. G (2026 NTA). The DHS Notice of I-261 corrects the allegation to reflect petitioner was admitted on December 20, 2022, on a B2 visa, was authorized to remain until June 19, 2023, and remained beyond that date without authorization. Dkt. 7 (Collins Decl.), Ex. H (Notice of I-261).

ICE issued a Form I-200 Warrant of Arrest of Alien on July 23, 2026. Dkt. 6 (Subero Decl.), ¶ 11; Dkt. 7 (Collins Decl.), Ex. E (Warrant of Arrest). When petitioner appeared for a scheduled asylum interview at the USCIS office in Tukwila, Washington on July 24, 2026, ICE served the arrest warrant, took petitioner into custody, and served him with a Notice of Custody Determination, indicating that ICE determined that petitioner would be detained without release on bond. Dkt. 6 (Subero Decl.), ¶ 12; Dkt. 7 (Collins Decl.), Ex. F (Notice of Custody).

Respondents allege petitioner refused to sign that document and did not request that an immigration judge review the custody determination. *Id.* ICE also served petitioner with a Notice to Appear under Section 237(a)(1)(B) of the INA, indicating that petitioner had remained in the United States for a time longer than permitted after being admitted as a nonimmigrant pursuant to Section 101(a)(15) of the INA, in violation of the INA or any other law of the United States. Dkt. 6 (Subero Decl.), ¶ 12; Dkt. 7 (Collins Decl.), Ex. G (2026 NTA), Ex. H (Form I-261, Amending NTA). That same day, petitioner was booked into the Northwest ICE Processing Center ("NWIPC"). Dkt. 7 (Subero Decl.), ¶ 13.

Petitioner asserts that on July 24, 2026, ICE refused to allow his attorney to remain present while it allegedly served documents on petitioner and left counsel waiting for several hours promising to provide documentation that never arrived. Dkt. 1 at 8. Petitioner's counsel states that no Form I-200 warrant was served on the attorney or on petitioner at the asylum office when petitioner was arrested. Dkt. 8-1 (Boyd Decl.). Petitioner's counsel states that when he visited petitioner in the detention center a few days later, the only document petitioner had was a Notice to Appear that did not contain

the mark – “refused to sign” -- and that petitioner stated he was not provided with any other document. *Id.* Thus, petitioner’s counsel disputes respondent’s assertions that ICE served petitioner with the arrest warrant or any other documents other than the NTA. *Id.*

Petitioner also raises numerous challenges to the record relied upon by DHS to initiate removal proceedings. Dkt. 1 at 8-9. Petitioner further argues that administrative irregularities, including denial of counsel’s request to appear virtually, recusal of the assigned judge, and failure or DHS to forward the already-filed asylum application to the immigration court over the course of several months have resulted in prolonged detention. *Id.* at 10-11.

Petitioner was scheduled for a Master Calendar hearing on November 2, 2026, and he remains detained at NWIPC. Dkt. 6 (Subero Decl.), ¶ 19.

## DISCUSSION

### A. Statutory Basis for Detention

Regardless of the statutory basis of petitioner’s detention, the Due Process Clause may provide procedural protections not found in the statue. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. March 12, 2026) (“statutory authority to detain does not obviate respondents’ obligation to comply with due process.”); *see also Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) (quoting *E.A. T.-B. v. Wamsley*, No. 25-cv-1192-KKE, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. Aug. 19, 2025)) (“the fact ‘that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.’”).

The Court need not reach the question of whether petitioner is detained under 28 U.S.C. § 1226(a) or 28 U.S.C. § 1226(c) because, as discussed below, under the circumstances here, petitioner had a due process right to pre-deprivation notice and an opportunity to be heard prior to his detention. *See Bravo-Zambrano v. Bondi*, No. C26-0167JLR, 2026 WL 879245, at *3 (W.D. Wash. Mar. 31, 2026) (Finding a due process violation under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) and granting release where petitioner was detained under § 1226(c) stating "[a]lthough § 1226(c) requires mandatory detention for certain noncitizens "who fall into one of the enumerated categories involving criminal offenses[,]" *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), all persons, regardless of their immigration status, are entitled to due process under the Fifth Amendment, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)"); *Sarwari v. Wamsley*, C26-00121-TL, 2026 WL 279968, at *3 (W.D. Wash. Feb. 3, 2026) (holding that the statutory basis for the Government's detention of petitioner was "irrelevant" because "the habeas petition before the [c]ourt is not directed at [the Government's] classification of Petitioner, but challenges his re-detention…as violative of due process").

**B. Due Process**

Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . " U.S. Const. amend. V. This right extends to "all persons within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

Here, petitioner argues his detention violates the Due Process Clause under the factors created by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See generally* Dkt. 1. To assess petitioner's arguments, the Court adopts the reasoning of *E.A. T.-B.*, 795 F. Supp. 3d at 1320-24; *see Mathews*, 424 U.S. at 335; *Rodriquez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (2022) (assuming without deciding that the *Mathews* test applies "in the immigration detention context.").

1) First *Mathews* Factor, Private Interest

As to the first factor, petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Petitioners' weighty liberty interest in not being detained is greatly diminished solely because he is a noncitizen in immigration proceedings. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (Freedom from restraint is at the core of the liberty protected by the Due Process Clause from arbitrary governmental action) *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Petitioner was arrested at an appointment for his asylum interview after living in the United States uninterrupted for several years; this clearly deprives them of a constitutionally protected liberty interest. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]").

If the government is aware of a noncitizen's presence in the country without legal

status and “acquiesce[es]” in their continued liberty, “reliance on [their] freedom create[s] a constitutionally protected liberty interest that cannot be extinguished without due process.” *A.B.J.C. v. Hermosillo*, No. 2:26-CV-00185-JNW, 2026 WL 497097, at *3 (W.D. Wash. Feb. 23, 2026) (Granting habeas petitioner’s release and finding, under *Mathews*, that where the government released petitioner on an OREC in 2020, affirmatively moved to dismiss his removal proceedings in 2022, and acquiesced in his freedom for six years, petitioner’s reliance on his freedom created a constitutionally protect liberty interest requiring due process consisting of pre-deprivation notice and a hearing before a neutral decisionmaker); *Vazquez v. Mullin*, No. C26-2039-KKE, 2026 WL 1911507 (W.D. Wash. July 2, 2026) (granting habeas petition and directing release under *Mathews* analysis where petitioner’s visa expired and the government did not detain petitioner until five years later).

Thus, having made the decision not to detain petitioner for several years after his visa expired and while his asylum application was pending, petitioner has a strong interest in remaining at liberty. The Court finds this factor weighs in petitioner’s favor.

2) Second *Mathews* Factor, Risk of Erroneous Deprivation

The Supreme Court “usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property.” *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Yet there “may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate.” *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *11 - *12 (E.D. Cal. Aug. 28, 2025) (citing *Zinermon*, 494 U.S. at 128 (noting there may be “special case[s]” where a pre-deprivation hearing is impracticable); *Guillermo M. R.*

*v. Kaiser*, 791 F. Supp. 3d 1021, 1031-1032, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ").

If a noncitizen is released after an evaluation of their dangerousness and flight risk, their re-arrest and re-detention generally requires a showing of a material change in circumstance. *See, e.g.*, *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (granting habeas relief and immediate release where government presented no evidence that "a change in circumstances" supported its decision to revoke the IJ's bond order); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017) (citing *Sugay* and noting government counsel's representation that "DHS has incorporated [*Sugay*'s] holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Here, petitioner had an extensive criminal history prior to his removal in 2012, but the government considered this criminal history and decided to grant him a visa and a waiver of ineligibility after considering his prior criminal history.

Although petitioner was arrested in 2023 after he re-entered the country on the visa, petitioner presents evidence that the arrest was for a warrant issued related to a harassment charge, domestic violence related, from 2010 issued prior to petitioner's departure in 2012, and that the charge was dismissed in July 2023. Dkt. 8-4 at 7. Furthermore, the government waited another three years after the 2023 arrest, and after the charge was dismissed, to detain petitioner and does not cite that arrest or dismissed

charge as the basis for his detention. Respondents argue a change in circumstance occurred because after petitioner was granted a visa the visa expired, and he remained in the country. But petitioner's visa expired in 2023; no efforts were made to detain petitioner for three years after his visa expired and while his asylum application was pending.

To the extent respondents argue that the waiver of ineligibility did not reflect a formal determination of flight risk or dangerousness, the respondents do not dispute that immigration authorities were provided the information regarding petitioner's prior criminal history when he applied for the visa and they chose to grant the visa and waiver and allow petitioner to enter the country. And furthermore, as the Court in *Gagik T v. Chestnut*, No. 1:26-CV-04337-MWJS, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) explained in rejecting the argument that petitioner lacked a liberty interest because the government's actions in admitting petitioner on a B-2 visitor visa, accepting his asylum application and granting him employment authorization did not reflect a formal determination of fight risk or dangerousness: "[t]he point is not that any single agency action adjudicated flight risk," but that the government's conduct, "taken as a whole, reflected a sustained decision to permit Petitioner's liberty[.]"

Here, petitioner was not provided with adequate notice of the allegations or an opportunity to respond prior to his arrest. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE's assertions before petitioner's detention.

The Court finds, under the circumstances, the risk of erroneous deprivation is high absent pre-deprivation notice and a hearing.

Thus, the Court finds the second *Mathews* factor favors petitioner.

3) Third *Mathews* Factor, The Government's Interest

The third and final *Mathews* factor also weighs in petitioner's favor. "[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore,* 538 U.S. at 518). But respondents' interest in civil detention without a hearing is low. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)) ("'If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.'"). Here there is no evidence of recent criminal activity by petitioner; he was arrested and detained when he voluntarily appeared for proceedings related to his asylum application.

Therefore, petitioner has a protected liberty interest in his continuing release from custody and all the *Mathews* factors weigh in his favor. Petitioner's detention violated due process.

The Court also finds a post-deprivation bond hearing is an inadequate procedural safeguard for petitioner because it would occur only after detention and, under the circumstances, fails to address an erroneous deprivation of liberty at a meaningful time. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-24 (quoting *Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025)) ("'Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.'"); *see also Guillermo M. R. v.*

*Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ.").

Accordingly, petitioner is entitled to immediate release from detention.[2]

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus (Dkt. 1) is GRANTED, and the Court ORDERS as follows:

(1) The respondents shall release petitioners from custody within 24 hours of the filing of this Order.

(2) No later than two business days after petitioner's release, the respondents must file with the Court a declaration confirming the date and time petitioner has been released from custody.

(3) Respondents shall not re-detain petitioner without providing adequate notice and a hearing before a neutral decisionmaker in accordance with due process in conjunction with any future re-detention while petitioner's removal proceedings are pending.

(4) The Court will entertain any appropriate post-judgment motion for attorney's fees.

Dated this 4th day of November, 2026.

Theresa L. Fricke
United States Magistrate Judge

[2] Because the Court finds petitioner is entitled to release on this ground it does not reach petitioner's other claims.